UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| Uber, Inc., a New York corporation, individually and as representative of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>Nationwide Mutual Insurance Company, an Ohio corporation, dba Nationwide;<br><br>    Defendant. | Case No.<br><br>**Class Action Complaint for Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and FCC Regulations, and for Declaratory Relief; Demand for Jury Trial; Exhibit**<br><br>**[Fed. R. Civ. P. 3, 8, 23; 28 U.S.C. § 1331]** |

Plaintiff Uber, Inc. ("Uber"), brings this action on behalf of itself and all other similarly situated parties, and avers:

**Introduction**

1. More than two decades ago the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, was enacted into law. The law responded to countless complaints by American consumers and businesses about the cost, disruption, and nuisance imposed by junk faxes. The law prohibited advertisers from transmitting facsimile advertisements without first obtaining express invitation or permission of the recipient. In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress

strengthened the law by amending it through the Junk Fax Prevention Act of 2005.[1] As amended, the law requires advertisers to include in their faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future faxes and explains how to exercise that right.

2. Plaintiff Uber, Inc., brings this class action to recover damages for and enjoin junk faxing by Defendant in direct violation of the TCPA and the regulations promulgated by the Federal Communications Commission. Within four years preceding the filing of this Complaint, Defendant has sent unsolicited junk faxes to Plaintiff including, but not limited to, the facsimile transmission of an advertisement to Uber's telephone facsimile number in May 2017, a true and correct copy of which is attached hereto as **Exhibit 1**.

3. **Subject Matter Jurisdiction and Standing**. This Court has subject matter jurisdiction over this matter under federal-question jurisdiction, 28 U.S.C. § 1331. *See Mims* v. *Arrow Fin. Servs., LLC,* 565 U.S. 368, 376 (2012). Plaintiff has standing to seek relief in this Court because 47 U.S.C. § 227(b)(3) authorizes commencement of a private action to obtain damages for Defendant's violations of the TCPA and/or FCC regulations, to obtain injunctive relief, or for both such actions. Uber sustained concrete and actual injury as a result of Defendant's actions and omissions because Defendant's junk faxes,

---

[1] Unless otherwise noted, all statutory references are to this statute in effect since 2005.

among other things, wrongfully occupied Uber's facsimile telephone lines; caused Uber's fax lines to be unavailable for legitimate business use; wasted time required to manage and dispose of Defendant's junk faxes; consumed and wasted Uber's electricity, paper, and toner; invaded Uber's privacy rights; failed to disclose to Uber its legal right and ability to stop future junk faxes, as required by the Opt-Out Notice Requirements (as defined below); and violated Uber's interests in seclusion.  Uber did not give Defendant prior express invitation or permission to send fax advertisements, including, but not limited to **Exhibit 1** to this Complaint.

4. **Venue.**  Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), (b)(2), (c) and (d) because Defendant is subject to personal jurisdiction in Ohio (and this district if it were a state) at the time this action is commenced, and some of the events or omissions complained of occurred in this district.  Venue is also proper in this Court under Local Rule 82.1.

5. **Personal Jurisdiction**.  This Court has personal jurisdiction over Defendant because it is domiciled in Ohio because Defendant is incorporated Ohio and has its principal place of business in Columbus, Ohio.

## The Parties

6. **Individual Plaintiff/Class Representative.** Plaintiff Uber, Inc., is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of New York, with its principal place of business in New York, New York. Uber is, and at all times relevant hereto was, the subscriber of the facsimile telephone number (212-643-1205) to which Defendant sent junk faxes, including, but not limited to, the fax attached as **Exhibit 1** to this Complaint.

7. **Defendant Nationwide Mutual Insurance Company.** Defendant Nationwide Mutual Insurance Company, dba Nationwide, is a corporation organized and existing under the laws of the state of Ohio, and having its principal place of business in Columbus, Ohio.  At all relevant times, Defendant has been a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1).

## The TCPA's Prohibition Against Junk Faxing

8. By the early 1990s advertisers had exploited facsimile telephone technology to blanket the country with junk fax advertisements.  This practice imposed tremendous disruption, annoyance, and cost on businesses and consumers.  Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and require recipients to sort

through faxes to separate legitimate fax communications from junk advertisements and to discard the latter.

9. Congress responded to the problem by passing the TCPA in 1991. The law was enacted to eradicate junk faxes and stanch "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. No. 102-317 (1991). It sought to accomplish this objective by prohibiting advertisers from transmitting facsimile advertisements without first obtaining prior express invitation or permission from the recipient.

10. The original law did not achieve its objectives, however. In the decade following the TCPA's enactment, American consumers and businesses continued to be "besieged" by junk faxes because senders refused to honor requests by recipients to stop.[2] Congress responded by strengthening the law through the JFPA. This 2005 amendment for the first time required advertisers to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements").[3] To comply with these requirements, an advertiser must include a clear and conspicuous notice at the top or bottom of the first page of the advertisement, separate from the advertising copy and any other disclosures, that informs recipients of their right to stop

---

[2] FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003).

[3] *See* 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

future junk faxes and of the legal requirements for an effective opt-out request.  The notice must be distinguishable from the advertising copy by use of bolding, italics, and different font.

### Defendant's Illegal Junk Fax Program

11.     Uber is informed and believes, and upon such information and belief avers, that Defendant is a large insurance and financial services company, focusing on domestic property and casualty insurance, life insurance, and asset management.  Defendant and its property and casualty affiliated companies are principally engaged in underwriting personal automobile, homeowners and commercial insurance products.

12.     Uber is informed and believes, and upon such information and belief avers, that Defendant is the registrant of the world mark "Nationwide."  The Nationwide website, www.mylosscontrolservices.com, to which recipients of Defendants' junk faxes are directed to visit (see **Exhibit 1**), states "Nationwide, the Nationwide N and Eagle, and other marks displayed on this page are service marks of Nationwide Mutual Insurance Company, unless otherwise disclosed."  That is consistent with the following statement set forth on **Exhibit 1**: "Nationwide, the Nationwide N and Eagle, and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company."  Uber is informed and believes, and upon such information and belief avers, that Defendant is the registrant of the website mylosscontrolservices.com

13. Within the four years preceding the commencement of this action, including, without limitation, in or around May 2017, and continuing to the present, Defendant has adopted and implemented an illegal junk fax advertising program to promote the sale of its property, goods and services. All faxes that are the subject of this lawsuit were designed as, intended as, and constituted advertisements under the TCPA within their four corners and as part of the overall, promotion, and sale of Defendant's property, goods, and services, including without limitation, its insurance services. These illegal junk faxes include, but are not limited to, **Exhibit 1** to this Complaint, which, among other things, alerts fax recipients to "policyholder discounts" to "[s]ee how much you can save on many loss control-related products and services," and invites recipients to "[a]sk about [Nationwide's] services or request information on a specific topic or industry," including by visiting Defendant's website set forth on the fax – mylosscontrolservices.com, including specifically mylosscontrolservices.com/overview and mylosscontrolservices.com/registernow (collectively, the "Nationwide Website"). Recipients of Defendants' junk faxes are also invited to "[v]isit our [web]site and start exploring," including by going to mylosscontrolservices.com/registernow and "[s]et up your account with your business information."

14. The Nationwide Website, mylosscontrolservices.com, has links for "Services" and "About," among other things. The "Services" portion of that website states in part "Read about core consultative services provided by the Nationwide Loss Control Services team . . ." The "About" portion of that website states "Nationwide is an

easy choice for selecting commercial insurance for your business. Learn how our strong financial rankings, customized policies and superior claims service can provide you the best value for your money."

15. Clicking on the "About" link on Defendant's Website leads to an "About Us" webpage (www.mylosscontrolservices.com/home/about), which states "[l]earn about Nationwide's suite of commercial solutions to help business owners protect what's most important." That webpage further states that Defendant can "tailor a program of coverage and services to fit the needs of your business," including because "[a]t Nationwide, we make selecting commercial insurance easy. We are the #8 property and casualty insurer in the United States and offer flexible, effective and fairly priced coverage options for you." The "About Us" webpage has links to "Learn more about Nationwide's small business insurance" and "Learn more about industry coverage for mid-size businesses." Clicking on the link "Learn more about Nationwide's small business insurance" directs fax recipients to a webpage on the www.nationwide.com website entitled "small business insurance solutions", where prospective customers can "select [their] industry", such as "professional services", which leads to another webpage where the prospective customer can "request a quote online" or by calling 1-888-490-1549 or "find an agent" regarding "business office space insurance." This webpage contains information about many of Defendant's small business insurance products and services, including for example, commercial auto insurance, errors and omissions insurance, employee practices liability insurance, and valuable papers and records

insurance.  As such, the faxes that are the subject of this lawsuit were designed as, intended as, and constituted advertisements under the TCPA within their four corners and because they advertised the commercial availability or quality of Defendant's property, goods or services through the Nationwide Website set forth on the faxes where a vast trove of information about Defendant's products and services is promoted and made available.

16. Uber is informed and believes, and upon such information and belief avers, that Defendant transmitted its junk faxes without obtaining recipients' prior express invitation or permission, in direct violation of the TCPA and FCC regulations.  Uber did not give Defendant prior express invitation or permission to send facsimile advertisements, including, but not limited to, **Exhibit 1** to this Complaint.

17. In the course of its illegal fax advertising campaign, Defendant failed to comply with the Opt-Out Notice Requirements and separately violated the TCPA and FCC regulations.  As a further result of these violations, Defendant is precluded from asserting either of the two defenses available under the TCPA: (i) "prior express invitation or permission" ("PEP") that may have been given by a recipient (§ 227(a)(5)); and (ii) a three-prong defense based on transmissions to a recipient with whom Defendant may have had an "established business relationship" ("EBR"), § 227(b)(1)(C)(i)-(iii)).

18. Defendant's violations of the TCPA and/or FCC regulations were "willful"

and/or "knowing" as used in § 227(b)(3) because, among other things: (i) Defendant fully intended its acts; the company's transmission of fax advertisements was no mistake or accident; and/or (ii) Defendant made no effort to comply with the Opt-Out Notice Requirements in sending the junk faxes that are the subject of the lawsuit.

19. Uber is informed and believes, and upon such information and belief avers, that Defendant is directly and/or vicariously liable for the violations of the TCPA and FCC regulations alleged herein because, *inter alia*, it (a) was a sender of the fax advertisements that are the subject of this lawsuit because the advertisements were sent on its behalf and/or its property, goods or services were promoted in them; (b) approved, authorized and/or participated in the formulation, preparation and sending of the fax advertisements; (c) received and retained the benefits of the fax advertisements in the form of revenue, name/brand recognition and promotion; and (d) had actual notice of the unlawful activity constituting the violations herein and failed to take steps to prevent the same.

20. **Private Right of Action.**  Under section (b)(3) of the TCPA, Uber has a private right of action to bring this action on behalf of itself and on behalf of the Plaintiff Class to redress Defendant's violations of the Act and the FCC regulations.

**Class Action Averments**

21. **Statutory Reference.** This action is properly maintainable as a class action because (a) all prerequisites of rule 23(a) are satisfied; (b) prosecution of separate actions by one or more individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and would establish incompatible standards of conduct for Defendant, in the manner contemplated by rule 23(b)(1)(A); (c) Defendant has acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole, as contemplated by rule 23(b)(2); and (d) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, as contemplated by rule 23(b)(3).

22. **Class Definition.** The Plaintiff Class consists of: All persons and entities that were subscribers of facsimile telephone numbers to which material that advertised the commercial availability or quality of any property, goods, or services of Defendant was sent via facsimile transmission to ten or more telephone numbers on or after July 2, 2014, including, without limitation the fax attached as **Exhibit 1** to this Complaint.[4]

---

[4] Excluded from the Plaintiff Class are officers, directors, and employees of Defendant or any affiliated company; legal representatives, attorneys, heirs, successors or assigns of Defendant, Defendant's officers and directors, or of any affiliated company; parent and subsidiary companies of Defendant; any entity in which any of the foregoing persons have or
(footnote continued)

Uber reserves the right to amend the class definition after completion of class certification discovery.

23. **Numerosity.** Uber is informed and believes, and upon such information and belief avers, that the Plaintiff Class numbers in the thousands, and is therefore sufficiently numerous that the joinder of all members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each Plaintiff Class member, in comparison to the time and costs associated with litigation on an individual basis.

24. **Typicality.** Uber's claims are typical of those held by the Plaintiff Class because they share the same essential characteristics. Among other things, they were sent the same type of unsolicited junk fax communications; they have the same claims under the TCPA and FCC regulations; and they are entitled to the same statutory damages and injunctive relief. In sum, Uber's claims arise from the same course of conduct that gives rise to the claims of the Plaintiff Class, and Uber's claims are based on the same legal theories.

---

have had a controlling interest; any members of the immediate families or the foregoing persons; any federal, state and/or local governments, governmental agencies, including the Federal Communications Commission; subsidiaries of Nationwide Mutual Insurance Company and other companies within the corporate network of Nationwide Mutual Insurance Company; and attorneys of record in this action and employees of Plaintiff's law firms, and their immediate family members.

25. **Adequacy of Representation.**  The Plaintiff Class will be well represented by Plaintiff and its counsel.  Uber appreciates the responsibilities of a class representative and understands the nature and significance of the claims made in this case.  Uber and the Plaintiff Class have the same legal claims based on the same statutes and/or regulations and they have suffered the same injury, and are entitled to the same relief.  Uber can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between their interests.  Plaintiff's attorneys have the necessary resources, experience and ability to prosecute this case on a class action basis.  Plaintiff's attorneys have extensive experience representing consumers and other clients in complex business disputes, have significant experience as class counsel in federal and state courts, and have significant experience prosecuting class actions for TCPA violations.

26. **Common Questions of Law and Fact Are Predominant**.  Questions of law and fact common to the class predominate over questions affecting only individual class members:

　　A.　**Common Questions of Fact**.  This case presents numerous questions of fact that are common to all class members' claims.  The case arises out of a common nucleus of fact and standardized conduct by Defendant because, among other things: (1) the same type of faxes; (2) were transmitted by the same sender, in the same manner; (3) in violation of the same statute(s) and FCC regulations in the same manner; and (4) entitling class members to receive the same statutory damages and injunctive

relief.

        B.    **Common Questions of Law**. The case presents numerous common questions of law, including, but not limited to:

        (1)    whether the faxes that are the subject of this lawsuit are advertisements within the ambit of the TCPA and the FCC regulations;

        (2)    whether Defendant sent unsolicited facsimile advertisements in violation of 47 U.S.C. § 227(b)(1)(C);

        (3)    whether Defendant complied with the Opt-Out Notice Requirements of the TCPA and the FCC's regulations, and the legal consequences of the failure to comply with those requirements;

        (4)    what constitutes a willful or knowing violation of the TCPA within the meaning of 47 U.S.C. § 227(b)(3);

        (5)    whether Defendant committed willful and/or knowing violations of the TCPA and/or the FCC's regulations;

        (6)    whether damages should be increased on account of Defendant's willful and/or knowing violations and, if so, by what amount; and

(7) whether the injunctive relief sought in paragraph 31, below, should issue.

27. **Injunctive Relief Is Appropriate**.  Defendant has acted on grounds that apply generally to the Plaintiff Class, making injunctive relief appropriate with respect to the Plaintiff Class as a whole.

28. **Superiority of Class Adjudication.**  This action should be maintained as a class action because a class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, (a) common questions of law and fact, including those identified in paragraph 26, above, predominate over questions affecting only individual members; (b) prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant; (c) proof of Plaintiff's claims will also prove the claims of the proposed class without the need for separate and individualized proceedings, and the statutory damages provided by the TCPA are the same for all members of the Plaintiff Class, such that damages can be calculated with mathematical certainty; (d) the practical economics of litigation and the potential recovery from individual litigation make it uneconomical for class members to prosecute individual claims; (e) class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings in the event individual cases are brought; (f) no litigation other than this case has been commenced against Defendant; (g) class litigation

would serve to educate members about their legal right to stop unwanted facsimile advertising, a particularly important interest in light of Defendant's failure to make disclosures required by the TCPA; (h) as a practical matter, due to the practical economics of litigation, the vast majority of Plaintiff Class members are not likely to bring claims and obtain relief absent class certification; and (i) equity dictates that all persons who stand to benefit from the relief sought herein should be subject to this action and, hence, subject to an order spreading the cost of litigation among class members in relationship to the benefits received.

**Count I: Defendant's Violations of 47 U.S.C. § 227 and FCC Regulations**

29. **Incorporation**.  Plaintiff and the Plaintiff Class reassert the averments set forth in paragraphs 1 through 28, above.

30. **Defendant's Violations of the Prohibition of Unsolicited Facsimile Advertising**.  Within four years preceding the commencement of this action, including, without limitation, in or around May 2017, and continuing to the present, Defendant, within the United States, violated the TCPA and FCC regulations promulgated under the act by reason of, among other things, transmitting unsolicited advertisements from telephone facsimile machines, computers, or other devices to telephone facsimile machines using facsimile telephone numbers of Uber and other members of the Plaintiff Class within the United States.

31. **Injunctive Relief.** Subsection (b)(3)(A) of the TCPA authorizes Plaintiff to bring an action to enjoin a violation of the act and/or FCC regulations. Plaintiff requests that preliminary and permanent injunctions issue to: (1) prohibit Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with it, from committing further violations of the act and FCC regulations, and thereby, among other things, prohibiting Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with it, from sending to any person or entity any further unsolicited fax advertisements or fail to comply with the Opt-Out Notice Requirements; (2) require Defendant to deliver to Plaintiff all records of facsimile advertisements that are the subject of this lawsuit, including all content sent via facsimile, fax lists used, and records of transmission; (3) require Defendant to adopt ongoing educational, training and monitoring programs to ensure compliance with the TCPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendant to provide written notice to all persons and entities to whom they sent, via facsimile transmission, advertisements in violation the Act and/or FCC regulations, warning such persons and entities that the facsimile transmission of unsolicited advertisements is in violation of the TCPA and FCC regulations and that they should not be led or encouraged in any way by Defendant's violations of the Act and/or FCC regulations to send advertisements of their own that violate the Act and/or FCC regulations; and (5) require Defendant to conspicuously place on the homepage of its website(s) the warnings contained in subparagraph 4 of this paragraph.

32.     **Damages.**  Subsection (b)(3)(B) of the act provides for the recovery of damages in the minimum amount of $500 for each violation by Defendant of the TCPA and/or FCC regulations alleged in this count.  In addition, Plaintiff is informed and believes, and upon such information and belief avers, that Defendant committed its violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3) of the act.

### Prayer for Relief

WHEREFORE, Uber and the Plaintiff Class pray for judgment against Defendant as follows:

1.     In accordance with (b)(3)(B) of the TCPA, awarding statutory damages in the amount of $500 for each violation of the TCPA and/or the FCC regulations in an amount not less than $5 million, and trebling of such statutory damages;

2.     Entering the preliminary and permanent injunctions requested in paragraph 31 of this Complaint;

3.     Certifying the Plaintiff Class defined in paragraph 22 of this Complaint;

4.     Appointing Uber as representative for the Plaintiff Class and awarding it an incentive award for its efforts as class representative;

5. Appointing Uber's counsel as counsel for the Plaintiff Class;

6. Ordering payment of Uber's costs of litigation, including, without limitation, costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

7. Ordering Defendant to provide notice to members of the Plaintiff Class proposed in paragraph 22, above, at its own expense, of the pendency of this action and all other notices ordered by the Court;

8. Awarding prejudgment interest; and

9. Awarding such other and further relief as the Court shall deem just and proper.

## Jury Demand

Plaintiff demands trial by jury on all issues triable by jury.

DATED: July 2, 2018  Respectfully submitted,

UBER, INC., a New York corporation,
individually and as representative
of all others similarly situated

/s/  *Robert E. DeRose II*
Robert E. DeRose II (OH Bar No. 0055214)
Trial Attorney
BARKAN MEIZLISH HANDELMAN
GOODIN DEROSE WENTZ, LLP
250 East Broad Street, 10th Floor
Columbus, OH 43215
Telephone:  (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com

-and-

C. Darryl Cordero (CA Bar No. 126689)*
Damon Rubin (CA Bar No. 186504)*
PAYNE & FEARS LLP
400 Continental Blvd., Suite 600
El Segundo, CA 90245
Telephone:  (310) 689-1750
Facsimile:  (310) 689-1755
cdc@paynefears.com
dr@paynefears.com

-and-

Frank F. Owen (FL Bar No. 702188)*
FRANK OWEN & ASSOCIATES PA
1091 Ibis Avenue
Miami Springs, FL 33166
Telephone: (954) 964-8000
FFO@CastlePalms.com

\* *Pro hac vice* motion forthcoming

4849-8128-8550.3